## Case No. 1,897.

BRITISH CONSUL v. The MERMAID.

[Bee, 69.][1]

District Court, D. South Carolina. April 3, 1795.

TREATIES—FRENCH TREATY OF FEB. 6, 1778—PRIVATEERS.

The 17th article of the treaty with France [8 Stat. 22] protects French privateers in bringing their prizes into our ports, (tho' such privateers may have originally been American bottoms) if the equipment for war be in a French port, and the commission regularly obtained by French citizens.

[1] [Reported by Hon. Thomas Bee, District Judge.]

[In admiralty. Libel for restitution of vessel captured as prize. Dismissed.]

Before BEE, District Judge.

This is a cause of considerable importance, in the course of which various and contradictory testimony has been adduced. If this court had been vested with the final decision of the case, I should have rejected much of the evidence; but as both parties intimated an intention to appeal, I chose rather not to interrupt the proceedings.

The libel charges three grounds of restitution of the captured property. 1st. That the privateer General Laveaux, by which the Mermaid was taken, was an American vessel at the time of her sailing from this port. 2d. That she was fitted for war here. 3d. That the greatest part of the crew was shipped here, and consisted of citizens of the United States.

These charges are positively denied by the answer, on the oaths of Sasportas and Gaillard, two of the defendants, who are expressly interrogated in the libel to these points. And it was contended that in such case the oath of the defendant must be conclusive, unless contradicted by two witnesses, or by one witness with the corroboration of probable circumstances. The law certainly gives little weight to a man's own oath in his own cause, if it be not supported by circumstances; and yet if there be but one witness to contradict the answer, the court will direct a trial at law to try the credibility of that witness. But where the answer is contradicted by two witnesses, they are sufficient to do it away. Gilb. Ev. 133, 134; 1 Vin. Abr. 161; Finch, Prec. 19; 3 Ch. Cas. 123.

On the first point, or ownership of the privateer, no direct proof has been adduced against the answer; but a great variety of circumstantial and presumptive proof is offered, which has been commented on with much ingenuity.

On the other hand, the answer is supported in this point by the evidence of the collector, who proves a change of property by his delivery up of the bond, and cancelling the register, in consequence of sale to a foreigner. This is prima facie legal evidence; for no vessel after this proceeding can become again American. The bill of sale is also good evidence to this point, unless set aside by direct proof, which is not produced. I am, therefore, of opinion that this brig, though formerly owned by an American citizen, was sold, and had changed her American character, before she left this port.

The second ground of the libel is, that she was fitted for war in Charleston. From the evidence, as well as from the acknowledgment of the party, there cannot be a doubt that this vessel underwent a material alteration previously to the change of ownership. Her quarter deck was taken away, all decayed timbers and planks repaired, her ports opened, and other work done. By whom, then, at what time, and with what intent these alterations were made, and under what penalty, are all material questions, upon the determination of which the cause must turn. It appears by the shipcarpenter's book that the repairs of this vessel were begun on the 14th May, that all the alterations to her hull were made prior to the 23d June, and that every thing was done by order of Sasportas, who alone is charged with the same in the shipcarpenter's books. Whether the old ports only, and no new ones, were opened, is made doubtful by the contrariety of evidence; but upon careful investigation of it, it appears that the vessel, having been originally built for a privateer, had ports fore and aft, most of which had been nailed up and caulked in. And though the seams might be discovered on the outside of the vessel, yet, in the inside, the lining concealed the old ports, and they could not be seen till that was ripped off. They of course, became visible, as soon as the quarter deck, cabin, and steerage were taken away; which, I have no hesitation in saying, might legally be done.

The laws of neutrality and nations in no instance, that I know of, interdict neutral vessels from going to sea armed and fitted for defensive war. All American Indiamen are armed, and it is necessary they should be so. But it appears from the pleadings, both answer and replication, that this vessel was put into the hands of the carpenters, that she might be prepared for a cruize, in case of war between the United States and Great Britain. When the wisdom of congress substituted an embargo for a declaration of hostilities, preparations of this sort might have been seen in every state of the union. No vessel could go to a foreign port, and they were. therefore, equipped for war at home, as their owners thought fit; nor will it be contended that this was illegal. From the instructions and circular letter to the different collectors it was clear that the vessels of the belligerent powers alone were comprehended in the restrictions. Even they might arm for defence; and if, as respected French vessels, it should appear doubtful whether their equipment was applicable to war or commerce, such equipment was declared lawful. I have before had occasion to observe that though these instructions were not binding on the court, they were, nevertheless, entitled to attention as expressive of the wishes of the government founded upon the law of nations.

Having declared my opinion that the original fitting out of this vessel was legal, I will consider the operation of the acts of congress of 22d May [1794 (1 Stat. 369)], and 5th June [1794 (1 Stat. 376)], so far as they apply to this case.

While this vessel was American, and armed only for defence, the act of 5th June did not reach her; and the act of 22d May,

passed to prohibit the exportation of warlike stores, excepts such articles as may constitute the equipment of any vessel, foreign or native. When the act of June was promulgated here, the repairs of this vessel were complete, and her ports open. After sale to Ladevize, she took on board guns; but then the collector interfered, ordered her guns to be landed, and her ports to be closed; which, according to the report of officers, sworn to the discharge of their duty, was done. She was searched from stem to stern, above and below, and no warlike instrument of any kind was found. What more could be done or required? Was the American owner to have his property laid up, and rendered useless because he had been preparing for war at a time when it was not only lawful, but laudable? An attempt was made to prove that she had guns in her hold when she passed the bar; but this rested upon hearsay evidence, not upon oath, and merits no attention; especially when opposed to the oaths of two of the defendants.

The third ground of the libel is that the crew, or the greater part of it, consisted of citizens of the United States, shipped in this port. The oaths of the defendants deny this. They swear that she had on board twenty three Frenchmen, including four officers, together with seventeen French soldiers and five officers belonging to French regiments at Port-de-Paix and no other persons. The pilot, who carried her over the bar, says her crew consisted of about forty, all outlandish, and only one able to speak English. The captain of the prize gives a similar testimony. No proof being adduced to support this part of the libel it must be wholly laid aside.

As it is clear from all the circumstances that this privateer has not infringed any neutral right of the United States, she is protected by the 17th article of our treaty with France, in conformity to which her commission has been exhibited, and appears regular and legal. The prize was taken far beyond our jurisdictional limits; and I feel no difficulty in decreeing that the libel be dismissed with costs.